DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By: Danielle Kudla
Assistant United States Attorney
26 Federal Plaza, 37th Floor
New York, New York 10278
Tel: (212) 637-2304

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────────────

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| -v.- | : |
| ALL ASSETS AND FUNDS FORMERLY CONTAINED IN BINANCE ACCOUNT ID 804093810, INCLUDING: | : |
| 143,141.22354808 Internet Computer (IC); 21,040.21498360 Avalanche (AVAX); 7,668,131.89194094 Ripple (XRP); 3,947,566.56755894 Cardano (ADA); and 43,137.54120377 Solana (SOL); | : |
| Defendant-in-rem. | : |

**VERIFIED CIVIL COMPLAINT FOR FORFEITURE**

**24 Cv. 8559 (_____)**

──────────────────────────────── X

Plaintiff United States of America, by its attorney, Damian Williams, United States Attorney for the Southern District of New York, for its verified civil complaint, alleges, upon information and belief, as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to Title 18, United States Code, Sections 981(a)(l)(A) and 981(a)(l)(C) by the United States of America seeking the forfeiture of the following:

All assets and funds formerly contained in Binance Account ID 804093810 (the "Subject Account"), including:

    a.    143,141.22354808 Internet Computer (IC);

      b.      21,040.21498360 Avalanche (AVAX);

      c.      7,668,131.89194094 Ripple (XRP);

      d.      3,947,566.56755894 Cardano (ADA);

      e.      43,137.54120377 Solana (SOL); and

(a. through e., collectively, the "Defendant-in-rem").

      2.      This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

      3.      Venue is proper pursuant to Title 28, United States Code, Section 1395 because the *Defendant-in-rem* is currently in the custody of the United States Marshals Service (the "USMS") located within the judicial district for the Southern District of New York.

      4.      As set forth below, there is probable cause to believe that the Defendant-in-*rem* are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(l)(C) as proceeds traceable to violations of a conspiracy to violate and substantive violation of the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA"), in violation of Title 18, United States Code, Section 371 and Title 15, United States Code, Section 78dd-2, or property traceable thereto, and pursuant to Title 18, United States Code, Sections 98l(a)(l)(A) as property involved in money laundering, in violation of Title 18, United States Code, Sections 1956(a)(l)(B)(i), 1957, and 1956(h).

## FACTUAL ALLEGATIONS

      5.      This action arises out of an investigation conducted by the Federal Bureau of Investigation ("FBI") and Special Agents with the United States Attorney's Office of the Southern District of New York ("USAO-SDNY") into Samuel Bankman-Fried ("Bankman-Fried"), and others known and unknown, and certain conduct that occurred in or about November

2021 wherein Bankman-Fried agreed to and directed a multi-million-dollar bribe to seek to unfreeze certain cryptocurrency trading accounts that collectively contained approximately $1 billion in cryptocurrency (the "Investigation").

6. On March 27, 2023, a grand jury sitting in the Southern District of New York issued a superseding indictment (the "Indictment") charging Bankman-Fried in thirteen counts. *See United States v. Bankman-Fried,* S5 22 Cr. 673 (LAK). A copy of the Indictment is attached as Exhibit A and incorporated by reference as set forth fully herein.

7. Count Thirteen of the Indictment charges Bankman-Fried with conspiring with others to violate the anti-bribery provisions of the FCPA, in violation of 18 U.S.C. § 371, in connection with a multi-million-dollar bribe scheme to regain access to Alameda Research's ("Alameda") cryptocurrency trading assets that were frozen by Chinese law enforcement.[1]

8. As set forth in greater detail in the Indictment, between in or about November 2017, up to and including in or about November 2022, Bankman-Fried, a United States citizen, founded and controlled FTX, a global cryptocurrency exchange headquartered at times in the Bahamas, and Alameda, a quantitative cryptocurrency trading firm incorporated in Delaware, which had operations in the United States, Hong Kong, and The Bahamas.

9. As the Indictment alleged, in or around early 2021, Chinese law

---

[1] On June 15, 2023, Count Thirteen of the Indictment, along with four other counts, were severed from eight counts contained in an original indictment and scheduled for trial on March 11, 2024. On October 3, 2023, the Government proceeded to trial on seven of the eight counts contained in the original indictment, which included wire fraud on FTX customers, conspiracy to commit wire fraud on FTX customers, wire fraud on Alameda lenders, conspiracy to commit wire fraud on Alameda lenders, conspiracy to commit securities fraud on FTX investors, conspiracy to commit commodities fraud on FTX customers, and conspiracy to commit money laundering. *See* S6 22 Cr. 673 (LAK). On November 2, 2023, the jury returned a verdict of guilty on all seven counts. On December 29, 2023, the Government notified the Court it would not proceed on the severed counts, including Count Thirteen. *See* 22 Cr. 673 (LAK), Dkt. No. 388.

enforcement authorities froze certain Alameda cryptocurrency trading accounts (the "Accounts") on two of China's largest cryptocurrency exchanges (the "Chinese Exchanges") that collectively contained approximately $1 billion in cryptocurrency.

10. As a result of the Investigation, the Government learned that on or about November 16, 2021, at Bankman-Fried's direction, approximately 40 million USDT[2] (the "Bribe Payment") was transferred from an Alameda cryptocurrency wallet hosted by FTX to a private wallet' ("Private Wallet-I") as part of the initial payment to unfreeze the Accounts. At or around the time of the 40 million USDT payment, the Accounts were unfrozen.

11. After confirmation that the Accounts were unfrozen, Bankman-Fried authorized additional payments to be made in the amount of tens of millions of dollars in cryptocurrency in order to complete the bribe.

12. Thereafter, other individuals known and unknown laundered the Bribe Payment through multiple additional private wallets, in order to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds.

13. On or about December 21, 2023, the Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, executed a Seizure Warrant authorizing the Government to seize the *Defendant-in-rem* as proceeds traceable to violations of a conspiracy to violate and substantive violation of the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA"), in violation of Title 18, United States Code, Section 371 and Title 15,

---

[2] USDT, also known as Tether, is a fiat-collateralized stablecoin that is backed by the U.S. dollar for price stability.

[3] As described *infra,* paragraph 15, a "private wallet" is a physical medium, device, service, or digital application that maintains passwords for cryptocurrency transactions. A "private wallet" is typically a wallet that is not hosted by centralized exchange that maintains "know your customer" policies and records, which permits greater anonymity with otherwise public transactions.

United States Code, Section 78dd-2, or property traceable thereto, and pursuant to Title 18, United States Code, Sections 98l(a)(l)(A) as property involved in money laundering, in violation of Title 18, United States Code, Sections 1956(a)(l)(B)(i), 1957, and 1956(h) (the "Seizure Warrant").

## THE DEFENDANT-IN-REM

14. Cryptocurrency is any currency, money, or money-like asset that is primarily managed, stored, and/or exchanged on digital computer systems. Cryptocurrency is a decentralized, peer-to-peer form of electronic currency that has no association with traditional banks or governments. Like traditional fiat currency, there are multiple types of cryptocurrency, such as Bitcoin, Ethereum, Litecoin, and Tether, among others. Due to its decentralized nature and limited regulation, cryptocurrency allows users to transfer funds more anonymously than would be possible through traditional banking and credit systems. Although they are legal and have known legitimate uses, cryptocurrency is also known to be used by cybercriminals for money-laundering purposes.

15. Cryptocurrency owners typically store their cryptocurrency in digital "wallets," which are identified by unique electronic "addresses." A so-called "private wallet" is a physical medium, device, service, or digital application that maintains passwords for cryptocurrency transactions. A "private wallet" is typically a wallet that is not hosted by centralized exchange that maintains "know your customer" policies and records, which permits greater anonymity with otherwise public transactions. By maintaining multiple cryptocurrency addresses, those who use cryptocurrency for illicit purposes can attempt to thwart law enforcement's efforts to track the flow of illegal proceeds by quickly transferring illicit proceeds in various amounts through multiple cryptocurrency addresses.

16. Each cryptocurrency transaction, however, regardless of the cryptocurrency

denomination, is recorded on a public database commonly referred to as the "blockchain," which acts as an accounting ledger. The blockchain records, among other things, the date and time of each cryptocurrency transaction, the unique cryptocurrency addresses associated with the sending and receiving parties, and the amount of cryptocurrency transferred. Because each cryptocurrency address is unique, law enforcement can review the blockchain to identify relevant cryptocurrency transactions and trace the flow of cryptocurrency across various cryptocurrency addresses. This form of cryptocurrency tracing is labor intensive and complicated by each transfer to a different cryptocurrency address.

17. Persons who launder money are known to use cryptocurrency wallets to launder crime proceeds. Activity indicative of a cryptocurrency wallet being used to launder crime proceeds includes (but is not limited to) (i) high-volume of stablecoin and BTC deposits, which are then quickly converted to various cryptocurrency denominations through over-the-counter (OTC) trades and withdrawn from that cryptocurrency wallet, only to be returned to the account thereafter; (ii) using multiple cryptocurrency transfers from the cryptocurrency wallet to private wallets, many of which had no prior balance prior to their receipt of proceeds; the private wallets serve as intermediary deposit accounts before sending funds on to the ultimate destination wallet, in order to add a layer of anonymity between the original source of funds and the destination wallet.

18. In particular, the Investigation revealed, among other things, the following:

a. On or about November 16, 2021, Private Wallet-I received the Bribe Payment from an Alameda cryptocurrency wallet. Prior to receipt of the Bribe Payment, Private Wallet-I had a minimal balance of approximately 105 USDT.

b. Between on or about December 16, 2021 and on or about December 17, 2021, Private Wallet-I split the Bribe Payment by transferring approximately 12 million USDT

from Private Wallet-I to a private wallet ("Private Wallet-2") and approximately 28 million USDT to another private wallet ("Private Wallet-3").⁴ Prior to receipt of approximately 12 million USDT of the Bribe Payment, Private Wallet-2 had no prior balance.

    c. Between on or about December 16, 2021 and on or about December 17, 2021, Private Wallet-2 transferred approximately 4.6 million USDT to another private wallet ("Private Wallet-4") in a series of transactions through an intermediary wallet ("Intermediary Wallet-I"). Prior to the transfer of 4.6 million USDT of the Bribe Payment, Private Wallet-2 transferred approximately 5 million USDT of the Bribe Payment to other private wallets. Prior to the receipt of approximately 4.6 million USDT of the Bribe Payment, Intermediary Wallet-I had less than 0.6 Ether ("ETH"), which was then equivalent to approximately $2,320, and Private Wallet-4 had no prior balance.

    d. On or about November 17, 2023, Private Wallet-4 transferred approximately 2 million USDT of the Bribe Payment to another private wallet ("Private Wallet-5"). Between on or about December 16, 2021 and on or about November 17, 2023, Private Wallet-4 did not receive any additional transactions of value before transferring approximately 2 million USDT of the Bribe Payment to Private Wallet-5. Prior to the receipt of approximately 2 million USDT of the Bribe Payment, Private Wallet-5 had an approximate account balance of 24 million USDT.

    e. Between on or about December 4, 2023 and on or about December 9, 2023, Private Wallet-5 transferred approximately 22 million USDT through a series of direct

---

⁴ Presently, the portion of the Bribe Payment transferred to Private Wallet-3 has not been traced to a wallet on a centralized exchange that is amenable to United States legal process.

and indirect transactions to a particular Binance Holdings Ltd. deposit wallet (the "Binance Deposit Wallet").

    f. Binance Holdings Ltd. ("Binance") was an entity registered in the Cayman Islands and operated Binance.com, which launched in or about July 2017 and became a foreign-based cryptocurrency exchange known as Binance. Binance did business wholly or in substantial part within the United States, including by servicing a substantial number of U.S. users, and, at least during the timeframe of the transactions described herein, qualified as a financial institution pursuant to 31 U.S.C. § 5312(a)(2).

    g. The Subject Account was created on or about November 9, 2023.

    h. On or about December 4, 2023, the Binance Deposit Wallet received initial deposits in the form of millions of USDT from Private Wallet-5, *see supra* 18(e). The Binance Deposit Wallet contains a unique identifier that is linked to the Subject Account. The Binance Deposit Wallet is one of five deposit wallets linked to the Subject Account.

    1. The transaction activity in the Subject Account established a particular transaction pattern involving a circular flow of incoming deposits and outgoing withdrawals. Specifically, the five deposit wallets linked to the Subject Account, including the Binance Deposit Wallet, received nearly daily deposits of stablecoins and Bitcoin ("BTC") and then converted those deposits shortly thereafter to various cryptocurrency denominations through over-the-counter ("OTC") trades. Following the OTC trades, the cryptocurrency was then withdrawn from the Subject Account, deposited in an intermediary deposit wallet, and then an approximate equivalent amount of cryptocurrency was then returned to three of the five deposit wallets linked to the Subject Account, one of which is the Binance Deposit Wallet.

J. On or about December 4, 2023, the Subject Account received approximately $77,875,139 worth of cryptocurrency deposits, which were traded and/or withdrawn from the Subject Account, resulting in a remaining account balance of approximately $822,888 worth of cryptocurrency moments before the receipt of the first transaction involving the 22 million USDT from Private Wallet-5 to the Binance Deposit Wallet, as described above in paragraph 18(e).

k. Between on or about December 4, 2023 and on or about December 12, 2023, the Subject Account withdrew approximately $59.4 million in various denominations of cryptocurrency. As of December 12, 2023, the Subject Account remained active with an approximate account balance of $8.6 million in various denominations of cryptocurrency.

19. As noted *supra,* paragraph 13, on or about December 21, 2023, the Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, executed a Seizure Warrant authorizing the Government to seize the contents of the Subject Account. The contents of the Subject Account, comprised of the Defendant-in-rem, is presently located in the Southern District of New York. *(See supra* ¶3).

## CLAIMS FOR FORFEITURE

### COUNT ONE
### Forfeiture Under 18 U.S.C. § 981(a)(l)(A)
### (Property Involved in a Transaction or Attempted Transaction in Violation of 18 U.S.C. § 1956 or Property Traceable to Such Property)

20. Paragraphs 1 through 19 of this Complaint are repeated and re-alleged as if fully set forth herein.

21. Pursuant to Title 18, United States Code, Section 981(a)(l)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of Title

18, United States Code, Section 1956, or any property traceable to such property, is subject to forfeiture to the United States.

22. Title 18, United States Code, Section 1956(a)(l)(B)(i) imposes a criminal penalty on any person who:

> knowing that the property involved in a financial transaction involves the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ...
>
> (B)  knowing that the transaction is designed in whole or in part
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

23. As defined in Title 18, United States Code, Section 1956(c)(7), "specified unlawful activity," includes, among other things, violations of the Foreign Corrupt Practices Act. The Foreign Corrupt Practices Action, Title 15, United States Code, Section 78dd-2, provides in part:

> (a) It shall be unlawful for any domestic concern... or for any officer, director, employee, or agent of such domestic concern or any stockholder thereof acting on behalf of such domestic concern, to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to-
>
> (1) any foreign official for purposes ot=-
> (A)
> (i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage; or
>
> (B) inducing such foreign official to use his influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person;

24. By reason of the foregoing the Defendant-in-rem is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 981(a)(l)(A) as property involved in a money laundering transaction or an attempted money laundering transaction, in violation of Title 18, United States Code, Section 1956, or as property traceable to such property.

## COUNT TWO
### Forfeiture Under 18 U.S.C. § 98l(a)(l)(A)
**(Property Involved in a Transaction or Attempted Transaction in Violation of 18 U.S.C. § 1957 or Property Traceable to Such Property)**

25. Paragraphs 1 through 19 of this Complaint are repeated and re-alleged as if fully set forth herein.

26. Pursuant to Title 18, United States Code, Section 981(a)(l)(A) any property, real or personal, involved in a transaction or attempted transaction in violation Title 18, United States Code, Section 1957, or any property traceable to such property, is subject to forfeiture to the United States.

27. Title 18, United States Code, Section 1957 imposes a criminal penalty on any person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." Section 1957(f)(l) defines "monetary transaction" to include the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution     "

28. Section 1957(±)(3) defines "specified unlawful activity" to have the same meaning as given in Section 1956. As set forth above, the FCPA offense, in violation of Title 15, United States Code, Section 78dd-2, is a specified unlawful activity for purposes of Section 1956.

29. By reason of the foregoing the *Defendant-in-rem* is subject to forfeiture to

the United States pursuant to Title 18, United States Code, Section 981(a)(l)(A) as property involved in a money laundering transaction or an attempted money laundering transaction, in violation of Title 18, United States Code, Section 1957, or as property traceable to such property.

## COUNT THREE
### Forfeiture Under 18 U.S.C. § 981(a)(l)(C)
**(Property Constituting or Derived from Proceeds Traceable to a Violation of the FCPA or Property Traceable to Such Property)**

30. Paragraphs 1 through 19 of this Complaint are repeated and re-alleged as if fully set forth herein.

31. Pursuant to Title 18, United States Code Section 981(a)(l)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title, or a conspiracy to commit such offense.

32. As set forth above, for purposes of Section 1956, "specified unlawful activity" includes violations of the Foreign Corrupt Practices Act. The Foreign Corrupt Practices Action, Title 15, United States Code, Section 78dd-2.

33. By reason of the foregoing the *Defendant-in-rem* is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 98l(a)(l)(C) as property constituting or derived from proceeds traceable to a violation of Title 15, United States Code, Section 78dd-2.

## CONCLUSION

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the *Defendant-in-rem* and that all persons having an interest in the *Defendant-in-rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the *Defendant-in-rem* to the United States of America for

disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
      November 13, 2024

                          DAMIAN WILLIAMS
                          United States Attorney for the
                          Southern District of New York
                          Attorney for the Plaintiff
                          United States of America


By:         /s/
                          Danielle Kudla
                          Assistant United States Attorney
                          26 Federal Plaza, 37th Floor
                          New York, New York 10278
                          Telephone: (212) 637-2304

**DECLARATION OF VERIFICATION**

KRISTIN ALLAIN, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that she is a Special Agent with the Federal Bureau of Investigation; that she has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of her knowledge, information and belief; and that the sources of her information and the grounds of her belief are her personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

Executed on November 5, 2024

_____
KRISTIN ALLAIN
Special Agent
Federal Bureau of Investigation